UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA MEYER-WILLIAMS,
       Plaintiff,

v.                                         CASE NO. 8:09-cv-1954-T-17MAP

COMMISSIONER OF SOCIAL
SECURITY,
       Defendant.
_____/

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks review of the Commissioner's decision denying her claims for a period of disability and Disability Insurance Benefits ("DIB"), as well as for Supplemental Security Income ("SSI"). She alleges the ALJ erred by 1) finding her capable of performing jobs that exceed the limitations of her RFC; 2) relying on the VE's testimony that was inconsistent with the DOT; 3) using the Grids as a framework for his decision; 4) failing to follow the Appeals Council's order to evaluate her mental impairments prior to her date last insured (DLI); 5) improperly evaluating the severity of her mental impairments for the entire period of her alleged disability; and 6) failing to consider new and material evidence. After consideration, I find remand is appropriate for the reasons explained below.

    *A. Background*

Plaintiff is a 59-year-old woman who has at least a high school education. (R. 31) She

has past work history as a hotel clerk, laundry operator, and nurse assistant. (R. 31) Plaintiff alleges disability beginning July 2, 1996. The date she was last insured for Title II benefits was March 31, 1997. Review of Plaintiff's medical records reveals an individual who has suffered from depression, anxiety, obsessions, and compulsions since childhood. She has required hospitalization on multiple occasions, mostly in the early 1990s. Hospital admission records indicate on one date that she had not eaten or slept in four to five weeks, on another date that she obsessively drank water resulting in dangerous "water intoxication," and on another date that she was "uncontrollably crying." (R. 161, 171, 179) In contrast to the early 1990s when Plaintiff was in and out of the hospital, she apparently did not seek any treatment for mental health complaints during the time period of 1994-2000. She alleges that during these years she owned her own apartment and sustained herself by living on inheritance money, and "self' medicated" with alcohol "because I couldn't get the medicine or I couldn't see the doctor." (R. 344, 539)

When Plaintiff sought treatment again in 2000, the doctor diagnosed alcohol dependency, obsessive compulsive disorder, and depression. She was admitted to and successfully completed an inpatient substance abuse program. Even at discharge, however, her emotional status was improved but not to the extent that she could function adequately without supervision. (R. 332) Although she has remained abstinent from drugs and alcohol since completing the inpatient program, her mental health problems have continued. While Plaintiff at times has looked for jobs and worked, her work history shows she has difficultly maintaining employment due to her inability to deal with stress and the characteristics of her mental illnesses. As a result, she has been homeless at times and has not always been able to pay for her prescribed medications. (R. 285, 291, 303) Her records show symptoms of OCD, including compulsions to touch and feel

things, picking at her skin and nails (sometimes to the point of causing infection), rearranging furniture and cleaning, and drinking excessive water. (R. 310, 324) She has a difficult time maintaining a healthy weight, and has lost as much as twenty pounds at a time (from her 5'1" frame and usual weight of around 102 lbs). (R. 312, 318)

Plaintiff's claims were initially denied. However, an ALJ subsequently concluded that although she was not disabled prior to March 31, 1997 (DLI), and therefore not entitled to period of disability or DIB, she was entitled to SSI as of April 17, 2002 (the date of the filing of her application). (R. 360) Plaintiff sought review with the Appeals Council. The Appeals Council vacated the decision in its entirety and remanded for further development and evaluation on two grounds. First, the Appeals Council instructed the ALJ to further develop and evaluate the nature, severity, and limiting effects of Plaintiff's mental impairments during the whole period at issue (including the time period prior to March 31, 1997 (DLI)). Second, the Appeals Council opined that the ALJ had erred in concluding that Plaintiff was disabled as of April 17, 2002, because Plaintiff did not allege a physical impairment and the ALJ did not find a severe physical impairment to support his finding that Plaintiff had the residual functional capacity for "less than sedentary" level work. (R. 368-69)

On remand, the file was then reassigned to a different ALJ who ultimately found Plaintiff had the impairments of a history of obsessive-compulsive disorder, depression, and polysubstance dependence/abuse dating back before the alleged onset date. (R. 21) The ALJ concluded, however, that none of these impairments was severe for the period July 1996 to Plaintiff's last insured date of March 31, 1997, and on that basis denied Plaintiff's claim for DIB. (R. 22) As to Plaintiff's SSI claim, the ALJ determined that since her filing date of April 12,

2002, Plaintiff had the severe impairments of "obsessive-compulsive disorder, depression and a history of alcohol dependence/abuse (now in remission)." (R. 24) The ALJ concluded, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. (R. 27) The ALJ further concluded that since April 12, 2002, Plaintiff had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels, but secondary to her severe mental impairments she is limited to understanding, remembering and carrying out simple, routine, repetitive instructions using simple judgment and involving simple changes in a work setting, and she is able to relate and interact appropriately with people." (R. 29) The ALJ opined Plaintiff would not be able to return to her past relevant work, but would be able to make adjustment to other work existing in significant numbers in the national economy. (R. 32) The Appeals Council denied review. (R. 6)

    *B. Standard of Review*

To be entitled to DIB or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a

"sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to

apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

### C. Discussion

#### 1. Mental impairments/ medical advisor

Because I find remand necessary, I will first address the Plaintiff's contentions warranting remand: that the ALJ erred by failing to call a medical advisor to consider whether her mental impairments became disabling prior to her DLI, and that Plaintiff did not meet the Listing requirements. While the Commissioner correctly contends that an ALJ usually has no obligation to call a medical expert to establish the onset date when the claimant fails to prove disability prior to DLI, an exception applies when the claimant suffers from a progressive mental impairment and the medical evidence as to the onset date of the claimant's mental impairments is ambiguous. *See McManus v. Barnhart*, 5:04-cv-67-OC-GRL; 2004 WL 3316303 (M.D. Fla. Dec. 14, 2004).

Of course, in order to obtain disability benefits, a claimant must demonstrate that she was disabled prior to her last insured date. The claimant must prove that she was either permanently disabled or subject to a condition which became so severe as to disable her prior to the date upon which her disability insured status expired. While the claimant has the burden of proving her disability, the ALJ has an affirmative duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). This duty to develop the record exists even when the claimant is represented by an attorney, as in

this case. *Brown,* 44 F.3d at 934. The ALJ's duty includes ensuring that the disability onset date is supported by the evidence. *See* SSR 83-20. When the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and obtain all evidence which is available to make the determination. Thus, an ALJ must call a medical advisor if the record is ambiguous regarding the onset date of the claimant's disability.

Several courts within the Eleventh Circuit have held that with slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. In *Volley v. Astrue,* one district court within this circuit explained:

> Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. 'In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available' but 'the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.' SSR 83-20. ... In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g. the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Volley v. Astrue,* case no. 1:07-cv-01380AJB (March 24, 2008); 2008 WL 822192 (N.D.Ga.). In a similar case, *McManus v. Barnhart*, *supra,* another district court within the Eleventh Circuit found that "the issue of onset was inextricably tied to the determination of disability in cases

7

where the impairment is a slowly progressive condition that is not traumatic in origin."[1]  The

*McManus* court concluded:

> ... that the most logical interpretation of SSR 83-20 is to apply it to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous.  Accordingly, in those situations the ALJ should be required to obtain the advice of a medical advisor to assist the ALJ in making the determination from the available medical evidence of whether the slowly progressive impairment constituted a disability prior to the date last insured.

*McManus*, 2004 WL 3316303, *6.

In this case, the evidence is ambiguous as to when, or if, Plaintiff's condition became disabling. Two consulting psychologists completed "psychiatric review technique" forms, and both concluded they had "insufficient evidence" to assess whether the Plaintiff was disabled for DLI.  *See* R. 234 (James LaVasseur, Ph.D.), R. 262 (Michael Stevens, Ph.D.)  Moreover, the ALJ rejected the opinions of treating psychiatrists, Larned and  Ehrlich, and consulting psychologist Needham who all opined that Plaintiff suffered from a disability and was unable to perform substantial gainful activity since July 1996, January 1, 1997, and at least 1997, respectively.  *See* R. 433, R. 444, R. 458.  My review of the medical evidence establishes that the Plaintiff suffered from depression, obsessions and compulsions, anorexia, and anxiety, beginning in childhood. While the records show that she required hospitalization for mental problems at least four times from February 1992- February 1994, she apparently did not seek medical treatment for such

---

[1] In *Volley,* the court recognized that other courts addressing the issue have concluded that mental conditions, such as experienced by Plaintiff, are progressive impairments. *See Blea v. Barnhart*, 466 F.3d 903, 911 (10th Cir. 2006) (dysthymia treated as a progressive impairment); *Walton v. Halter*, 243 F.3d 703, 705 (3d Cir. 2006) (bi-polar disorder a slowly progressive impairment); *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993) (depression and anxiety treated as slowly progressive impairments).

problems again until December 2000 when she sought treatment for obsessive compulsive disorder and depression and began inpatient therapy for alcohol dependency (R.337). At the administrative hearing, the Plaintiff explained that she refrained from medical help because she was "self-medicating because for whatever reason I couldn't get the medicine or I couldn't see the doctor." (R. 539, 567) Looking at the medical evidence, it is clear that Plaintiff suffered from depression, obsessions and compulsions, and anxiety both before and after her DLI, at times seeking treatment for these conditions on a relatively consistent basis.

At least one court in this district has recognized that when a claimant suffers from a mental disorder:

> …in some cases descriptions of activities of daily living or social functioning given by individuals or treating sources may be insufficiently detailed and/or may be in conflict with the clinical picture otherwise observed or described in the examinations or reports. It is necessary to resolve any inconsistencies or gaps that may exist in order to obtain a proper understanding of the individual's functional restrictions. An individual's level of functioning may vary considerably over time. The level of functioning at a specific time may seem relatively adequate or conversely, rather poor. Proper evaluation of the impairment must take any variations in level of functioning into account in arriving at a determination of impairment severity over time. This, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication in order to establish the individual's impairment severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D).… Individuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms. Such individuals may be much more impaired for work than their signs and symptoms would indicate. It is, therefore, vital to review all pertinent information relative to the individual's condition, especially at times of increased stress. … In some cases, the evidence shows that an individual's impairments are subject to temporary remission.

*See Baguer v. Apfel*, 65 F.Supp. 2d 1345, 1350 (M.D. Fla. 1999). Hence, when as in this case, the Plaintiff suffers from a slowly progressing mental impairment and the medical evidence does not indicate a definite onset date, the determination of onset date requires medical inferences and

9

the services of a medical advisor are required. Accordingly, I recommend the case be remanded for further administrative proceedings to allow the ALJ to obtain the services of a medical advisor to determine whether Plaintiff's onset date occurred prior to the DLI.

    *2. Listings*

Intertwined in this determination is the decision whether Plaintiff meets or equals the Listing with regard to her obsessive compulsive disorder, depression, and anxiety. Plaintiff argues the ALJ erred by not finding Plaintiff's OCD more severe. Specifically, Plaintiff points to the Introduction to Listings 12.00, which addresses chronic mental impairments and states:

> E. *Chronic mental impairments.* Particular problems are often involved in evaluating mental impairments in individuals who have long histories of repeated hospitalizations or prolonged outpatient care with supportive therapy and medication. For instance, if you have chronic organic, psychotic, and affective disorders, you may commonly have your life structured in such a way as to minimize your stress and reduce your symptoms and signs. In such a case, you may be much more impaired for work than your symptoms and signs would indicate.

The ALJ should discuss the fact that the Plaintiff has had a difficult time maintaining employment, and address the limitations imposed by her treating doctors. Plaintiff contends she has established repeated episodes of decompensation with her repeated hospitalizations, short-term employment, decomposition related to events in her life, and repeated obsessive compulsive tendencies with even minimal stress. Plaintiff further argues the evidence establishes "a residual disease process that has resulted in such marginal adjustment that even the minimal increase in mental demands or change in her environment caused her to decompensate." *See* doc. 22 at p.21. Although the ALJ noted that Plaintiff's treating psychiatrist Dr. Larned saw her most regularly throughout the time frame involved, the ALJ concluded that Dr. Larned's statement finding

Plaintiff disabled was unsupported by the medical evidence and did not rely on the statements when he determined that Plaintiff did not satisfy the Listing requirements.

   *3. Remaining arguments*

   I will briefly address the Plaintiff's remaining contentions of error.

   *a. other jobs*[2]

The Plaintiff argues the jobs identified by the VE and accepted as options by the ALJ exceed the limitations set out in the ALJ's determination of her residual functional capacity ("RFC") and the hypothetical presented to the vocational expert ("VE") at the hearing before the ALJ. She asserts that the RFC determined by the ALJ, including being limited in ability to carry out "simple routine repetitive instructions" and use "simple independent judgment," limited her to jobs at reasoning level 1. She contends the cleaner II and cleaner, industrial jobs identified by the ALJ as work she could perform require reasoning level 2 and therefore are not within the abilities determined by the ALJ. Plaintiff further contends that since the ALJ limited Plaintiff to jobs "involving simple changes in the work setting," he necessarily limited Plaintiff to jobs in Specific Vocational Preparation ("SVP") 1. She points out that the job of Industrial Cleaner has a SVP 2 (but acknowledges that the job of Cleaner II has an SVP 1). Thus, Plaintiff argues the

---

   [2] Where, as here, the ALJ determines a claimant is not able to return to any of her past relevant work, the burden shifts to the Commissioner to show there are other jobs in the national economy that the claimant can perform. *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999). When a claimant has a nonexertional impairment, "the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson v. Barnhart*, 284 F. 3d 1219, 1227 (11th Cir. 2002).

Cleaner II job meets the skill level but fails the reasoning level and industrial cleaner fails both.[3]

On remand, the ALJ should address these contentions.[4]

### b. ALJ's use of Grid Rule 204

The first ALJ decision used sedentary work as the framework for deciding an award of SSI benefits was appropriate. The Appeals Council remanded on the grounds that there was no evidence Plaintiff was limited to sedentary work. (R. 363-365; 368-70) In the decision currently before the Court, the ALJ used the Grid Rule 204 for "heavy" or "very heavy" work as a framework. Grid Rule 204 defines heavy work as follows:

> (d) *Heavy work.* Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. § 416.967. Grid Rule 204 defines very heavy work as follows:

---

[3] Plaintiff also argues it was error for the VE to fail to identify the jobs Plaintiff could perform by their numbers from the Dictionary of Occupational Titles ('DOT"). As the Commissioner notes, however, the VE is not required to cite a section from the DOT for listed jobs as the DOT is not the sole source of job information and the VE can identify examples of jobs based on his expertise. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) quoting *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (noting "DOT is not the sole source of admissible information concerning jobs").

[4] However, because the VE testified his opinions were consistent with the DOT, the ALJ was not required to independently verify that information. SSR 04-4p does not expressly mandate that an ALJ independently investigate whether there is a conflict between the VE's testimony and the DOT. Once the ALJ asks the VE if there is a conflict, and the VE advises that there is not a conflict then the ALJ is not required to investigate further and has fulfilled his obligation under SSR 04-4p. *See Horne v. Astrue,* 3:09cv194-MCR-EMT, 2010 WL 3239087, *15 (N.D. Fla. June 29, 2010). *See also Jones v. Apfel,* 190 F.3d 1224, 1229-30 (11th Cir. 1999) (holding that when the VE's testimony conflicts with the DOT, the VE's testimony "trumps" the DOT).

>   (E) *Very heavy work.* Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light, and sedentary work.

20 C.F.R. § 416.967.  Plaintiff points out that she is 5'1" and weighs 98 pounds and contends there is no evidence she is capable of heavy or very heavy work, *i.e.*, that she is capable of lifting and carrying more than her own body weight on an occasional basis.  While Plaintiff clearly would be physically incapable of performing heavy work, the ALJ's error in only citing the Grid rule 204 for heavy and very heavy work was harmless because the grids merely provided a framework for the ALJ's decision.

                    *c.  new evidence*

Plaintiff claims she submitted records from Sarasota County Health Department dated October 19, 2006, through March 23, 2007, and from Sarasota Memorial Hospital dated February 19, 2007, and February 27, 2007, to the ALJ prior to her hearing.  Plaintiff complains that the evidence was not entered into the record or considered in the decision, and argues the case should be remanded to the ALJ for consideration of the new evidence.

In response, the Commissioner argues there is no evidence that Plaintiff in fact submitted the additional records, Plaintiff confirmed at the hearing that the record before the ALJ was complete, and Plaintiff never mentioned the allegedly missing records in her memorandum in support of request for review of the ALJ's decision (R. 493-99) The Commissioner contends evidence submitted to the Court may be considered only to determine if remand is warranted under Sentence six of 42 U.S.C. § 405(g).  To warrant remand under sentence six, the Plaintiff must establish: (1) the new evidence is new and noncumulative; (2) the evidence is material such

13

that there is a reasonable probability it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. *Caulder*, 791 F.2d at 877. Here, the Plaintiff failed to demonstrate that the records are material, and has not shown good cause for failing to submit the records at the administrative level. She submitted copies of the Sarasota Health Department records for the first time annexed to her memorandum of law to this Court.

### *D. Conclusion*

Upon remand, the ALJ should consult a medical advisor, as set forth above. The ALJ should discuss whether the Plaintiff meets of equals the Listings 12.04 and 12.09, taking into consideration the opinions of Drs. Larned, Ehrlich, and Needham who all opined that Plaintiff is disabled. Per the Appeals Council's instructions, the ALJ should also evaluate the Plaintiff's "mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c)"and "whether Plaintiff's alcoholism is a contributing factor material to the finding of disability." In the event that it is necessary, the ALJ should consult a medical expert or vocational expert, per the Appeals Council's order as well. *See* Appeals Council order, R. 369.

For the reasons stated, I hereby RECOMMEND:

1. That judgment be entered for the Plaintiff and the case remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this

report.

      IT IS SO REPORTED in chambers on this 17th day of February, 2011.

                                                MARK A. PIZZO
                                                UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

      Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).